**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|                                         |     |                           |
|-----------------------------------------|-----|---------------------------|
| CAROL SLIFKO,                           | )   |                           |
|     Plaintiff,      | )   |                           |
|                                         | )   |                           |
| v.                                      | )   | CIVIL ACTION NO. 3:06-210 |
|                                         | )   |                           |
| MICHAEL J. ASTRUE,                      | )   | JUDGE KIM R. GIBSON       |
| COMMISSIONER OF SOCIAL                  | )   |                           |
| SECURITY,                               | )   |                           |
|     Defendant.      | )   |                           |

## MEMORANDUM OPINION AND ORDER OF COURT

**Gibson, J.**

This matter comes before the Court on the Parties' cross-motions for summary judgment and memoranda of law in support thereof. Document Nos. 13-16. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Court will vacate the decision of the Commissioner of Social Security and remand this case for further proceedings consistent with this Opinion.

## I. BACKGROUND

Plaintiff Carol Slifko (hereinafter "Slifko" or "Plaintiff") protectively filed applications for disability insurance benefits (hereinafter "DIB") and supplemental security income benefits (hereinafter "SSIB") on January 14, 2000, alleging disability as of February 24, 1999, due to a sprained knee. Certified Transcript, p. 17, Document No. 6. After the state agency initially denied these claims, Plaintiff pursued further administrative remedies. On April 27, 2001, an administrative law judge found Slifko capable of performing a wide range of sedentary work. *Id.* Plaintiff filed additional applications

1

for DIB and SSIB on November 27, 2001, alleging disability as of February 24, 1999. *Id.* On January 14, 2003, a second administrative law judge found Slifko capable of performing her past relevant work. *Id.* at 34-39. Thus, Plaintiff was denied benefits on two prior applications.

Slifko filed the instant applications for DIB and SSIB on March 8, 2004, with a protective filing date of January 14, 2004. *Id.* at 17. She alleged disability as of February 24, 1999, due to degenerative joint disease, diabetes, diverticulitis, bipolar disorder, high blood pressure and mitral valve prolapse. *Id.* The state agency initially denied these claims on July 12, 2004, prompting Plaintiff to file a timely request for a hearing on September 8, 2004. *Id.* On June 6, 2005, a hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge Donald M. Graffius (hereinafter "the ALJ"). *Id.* at 374. Slifko, who was represented by counsel, appeared and testified at the hearing. *Id.* at 376-424. Mark Heckman, an impartial vocational expert, was present for the entire hearing and also offered testimony. *Id.* at 411-18.

On June 20, 2005, the ALJ issued a decision unfavorable to Plaintiff. *Id.* at 17-26. The Appeals Council denied Slifko's request for review on August 2, 2006, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case. *Id.* at 8-10. Plaintiff filed the Complaint in the above-captioned matter October 3, 2006. Document No. 3. Jo Anne Barnhart (hereinafter "Barnhart"), Commissioner of Social Security, filed an answer on November 30, 2006. Document No. 5. Since that time, Michael J. Astrue (hereinafter "the Commissioner") has replaced Barnhart as the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), the Commissioner has been substituted as the Defendant in this case. Plaintiff and the Commissioner filed cross-motions for summary judgment on March 2, 2007, and April 2, 2007, respectively.

2

Document Nos. 13 & 15.

## II. STANDARD

When reviewing the Commissioner's administrative decisions, the Court must determine

whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C.

§ 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).

Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). *See also*

*Stewart v. Sec'y*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the United States

Court of Appeals for the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for
> adjudication; rather, our decisions make clear that determination of the existence *vel non*
> of substantial evidence is not merely a quantitative exercise. A single piece of evidence
> will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a
> conflict created by countervailing evidence. Nor is evidence substantial if it is
> overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered
> by treating physicians)—or if it really constitutes not evidence but mere conclusion.
> The search for substantial evidence is thus a qualitative exercise without which our
> review of social security disability cases ceases to be merely deferential and becomes
> instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citation omitted). *De novo* review of the facts is

prohibited and deference must be given to the Commissioner's findings unless there is an absence of

substantial evidence to support such findings in the record. 42 U.S.C. § 405(g); *Monsour Med. Ctr. v.*

*Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986).

When resolving the issue of whether a claimant is disabled and therefore entitled to DIB or

SSIB, the Social Security Administration (hereinafter "the SSA") uses a five-step sequential evaluation

3

process. The United States Supreme Court recently summarized this five-step process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (footnotes omitted).

## III. ANALYSIS

At the hearing, Plaintiff amended her alleged onset date to January 14, 2004, which was her protective filing date. Certified Transcript, pp. 377-78. Slifko was only insured through June 30, 2004, so she needed to establish the onset of disability on or before that date in order to qualify for DIB under Title II. *Id.* at 24. In his decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date. *Id.* Although Slifko suffered from high blood pressure, mitral valve prolapse and diverticulitis, the ALJ found these impairments to be non-severe. *Id.* at 19. Plaintiff also suffered from degenerative joint disease, residuals of a right knee proximal distal realignment and screw removal, obesity, non-insulin dependent diabetes mellitus, residuals of alcoholic hepatitis, history of alcohol abuse, a depressive disorder, and anxiety. *Id.* at 25. Although

4

these impairments were deemed "severe" for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii) and 416.920(c), they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, subpt. P, app. 1 ("Listing of Impairments" or "listed impairment"). *Id.* at 25. In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ made the following finding with respect to Slifko's residual functional capacity:

> The claimant has the residual functional capacity to perform light work activity.
>
> . . . .
>
> The claimant's residual functional capacity for the full range of light work is reduced by her need to be afforded the option to sit and stand during the work day, her limitation to occasional walking and standing two hours out of an eight-hour day, her need to avoid stooping, kneeling, crawling and climbing ladders, ropes and scaffolds, her need to avoid concentrated exposure to fumes, odors, dusts, gases, environments with poor ventilation, temperature extremes, extreme wetness and humidity, exposure to dangerous machinery and unprotected heights and operation of a motor vehicle, her limitation to simple, routine, repetitive, low stress tasks and her need to avoid repetitive hand motions known to aggravate carpal tunnel syndrome such as keyboarding.

*Id.* Moving on to the fourth step of the process, the ALJ determined that Plaintiff could not return to her past relevant work as a switchboard operator, a data processing clerk, a nurse's aide, or an emergency medical technician. *Id.*

At the time of the ALJ's decision, Slifko was thirty-six years of age, making her a younger individual under 20 C.F.R. §§ 404.1563 and 416.963. *Id.* She was literate in English, had a high school education, but possessed no transferable skills. *Id.* Based on the applicable residual functional capacity and vocational assessments, the ALJ concluded that Slifko could work as a ticket seller, a routing clerk, or a coupon redemption clerk, which were jobs at the light exertional level. *Id.* at 26. He also found Plaintiff could work as a product inspector, a nut sorter, an ampoule sealer, or a surveillance system

5

monitor, which were jobs at the sedentary exertional level. *Id.* Mr. Heckman's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). *Id.* at 411-18.

In support of her Motion for Summary Judgment, Plaintiff makes four specific arguments. First. Slifko argues that the ALJ failed to adequately consider all of her impairments, including those which were found to be non-severe. Document No. 14, pp. 20-21. According to Plaintiff, this caused an erroneous residual functional capacity determination. *Id.* Plaintiff's second argument, closely related to her first, is that the ALJ's hypothetical to Mr. Heckman was defective because of the erroneous residual functional capacity determination. *Id.* at 21-22. Since these two issues are substantially interrelated, the Court will address them together.

At the outset, it must be remembered that the Court cannot affirm the Commissioner's decision on a ground other than that adopted by the ALJ. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947), the United States Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*,

6

247 F.3d 34, 44, n.7 (3d Cir. 2001). Consequently, the Court's review is limited to the four corners of the ALJ's opinion. Moreover, the mere presence of sufficient evidence of non-disability in the record is not an adequate basis for affirming the ALJ's decision if the reasons given for the decision do not appear to equate with the ultimate result. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("[W]e cannot uphold a decision by an administrative agency . . . [if] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). With that in mind, the Court turns to the circumstances of the present case.

The Plaintiff first contends that the ALJ failed to consider the effect of her migraine headaches, bipolar disorder and endometriosis in determining her residual functional capacity. Document No. 14, p. 21. The Commissioner appears to argue that some alleged impairments were not considered because there was no medical documentation that they existed. Document No. 16, p. 13. After a thorough review of the record, the Court is unsure whether these impairments were properly considered because of the ambiguous treatment the ALJ gave them. This analysis requires a close examination of the ALJ's opinion, in which he stated:

The claimant testified to being unable to sit more than 15 minutes without pain, stand more than one minute, walk more than 20 minutes or lift more than a pound due to shaky hands and pain in the right thumb. She attempted to work in December 2004 but she was unable to perform the work due to her inability to type messages and having problems with patient names and phone numbers. She developed migraine headaches in the spring of 2004, which occurred twice a week, and Imitrex was prescribed causing extreme exhaustion and inability to concentrate and two of her other medications caused tremors. She attended ACRP because of her alcohol usage and there was a reduction in her consumption. She had problems going down steps due to her knee problems, she was unable to type for long periods and she had problems writing. She had to use the bathroom at least two times an hour due to an irritable bowel syndrome, she no longer attended church because there were no bathroom facilities and she used the bathroom before leaving her attorney's office and before she entered the hearing. Her mother

7

washed laundry and dishes and cooked. She experienced crying spells in which she didn't want to get out of bed and her medications caused fatigue and made her feel like a zombie. Her diabetes was not under control, it dropped rapidly without warning on a regular basis and it caused lethargy all day. She experienced panic attacks when driving on highways due to being around tractor trailers and other vehicles following too close on curves.

However, the undersigned notes the claimant continued to have one to two drinks a day, walked four blocks to the American Legion to drink and helped with the Ladies Auxiliary during the week. She cared for her personal needs, vacuumed, fed the cat, watched television most of the day, read mystery novels, spent up to 20 minutes typing on the computer and dusted.

The medical evidence reflects the claimant's continual alcohol consumption despite being hospitalized for alcohol hepatitis and consistent warnings from her physicians regarding possible deterioration in her health with continuation. . . .

Certified Transcript, p. 22. To some extent, the ALJ's recitation of Plaintiff's health problems may have been simply a restating of Slifko's testimony rather than a decision on his part to credit that testimony. On the other hand, this language in the ALJ's opinion could be construed to mean that he believed the testimony but discarded the limitations because they were attributable to Plaintiff's consumption of alcohol. The difference between these two possibilities is dispositive, since it is possible—perhaps even likely—that the ALJ believed Slifko's testimony but nevertheless failed to incorporate the limitations described therein into his residual functional capacity assessment.

The Parties have not specifically briefed the applicability of 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J) in this case. Instead, they base their arguments on the more general question of whether the ALJ's residual functional capacity assessment properly accounted for all of Plaintiff's impairments. Document No. 14, pp. 20-21; Document No. 16, pp. 11-17. The resolution of this question, however, depends largely on the application of §§ 423(d)(2)(C) and 1382c(a)(3)(J). Like the ALJ did in his

8

decision, the Commissioner appears to discount Slifko's testimony regarding "shaky hands, migraine headaches, frequent bowel movements, fatigue, etc.," with reference to her consumption of alcoholic beverages against medical advice. Document No. 16, pp. 17-18. Consideration of Plaintiff's alcohol problem, however, must be conducted within the proper framework. The ALJ did not explain whether he viewed Slifko's persistent consumption of alcohol as a basis for undermining her overall credibility as a witness, or whether he discounted the limitations described in Plaintiff's testimony because he attributed them to her consumption of alcohol. Certified Transcript, p. 22. In any event, activities such as walking a few blocks to drink, caring for personal needs, vacuuming, feeding a cat, watching television, reading mystery novels, dusting and typing on a computer for only twenty minutes are not inconsistent with a finding of disability. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Swope v. Barnhart*, 436 F.3d 1023, 1026, n.4 (8th Cir. 2006). Nor are they inconsistent with the limitations about which Slifko testified. For this reason, it appears that the ALJ discounted the limitations described in Plaintiff's testimony not because he did not believe that the limitations existed, but rather because he viewed them as attributable to Plaintiff's persistent consumption of alcohol.

Under 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J), an individual cannot be considered disabled under the Social Security Act "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." In order to implement these statutory provisions, the Commissioner has promulgated the following regulations:

(a) *General*. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

9

(b) *Process we will follow when we have medical evidence of your drug addiction or alcoholism.* (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935. If the Commissioner wishes to rely on Plaintiff's use of alcohol as

a basis for discounting limitations, he must first establish that these limitations would not exist but for

Slifko's abuse of alcoholic beverages. *Sklenar v. Barnhart*, 195 F. Supp.2d 696, 701-06 (W.D. Pa.

2002). Since the ALJ's opinion is unclear as to whether he relied on Plaintiff's use of alcohol as a basis

for discounting her overall credibility with respect to her testimony, or whether he viewed potentially

disabling impairments as attributable to her abuse of alcohol and proceeded to discount them on that

basis, the Court must remand the case for further administrative proceedings. It is difficult to fathom

how abuse of alcohol, however unwise it may be, impacts one's overall credibility as a witness. For

this reason, it appears to the Court that the ALJ viewed Plaintiff's alcohol consumption as the reason

for some of her health problems.

Mr. Heckman testified that if Slifko needed to use the restroom as often as she indicated, she

would be unable to retain the positions identified in his testimony. Certified Transcript, p. 418. The

ALJ indicated in his opinion that he believed that such a limitation was unsupported by credible

10

evidence. *Id.* at 24. It is unclear whether the ALJ did not believe Plaintiff's testimony as to that limitation, or whether he believed her testimony but considered the limitation to be attributable to her persistent consumption of alcohol. If the latter scenario is what the ALJ intended, as the context of his opinion appears to indicate, it is clear that the materiality determinations required under §§ 423(d)(2)(C) and 1382c(a)(3)(J) were not articulated. Moreover, since the ALJ recited all but the first sentence of Plaintiff's testimonial evidence without directly attributing it to her, it appears that he believed her testimony but declined to incorporate it because of her abuse of alcohol. *Id.* at 22. The Court does not mean to reduce the administrative process to an exercise in semantics. Nevertheless, the ambiguity in this particular opinion leaves the Court without a way to provide meaningful judicial review as to an issue that is clearly dispositive in this case. Since the Court cannot tell whether the limitations described in Slifko's testimony were properly discounted altogether as a simple matter of credibility or improperly discounted outside of the proper statutory and regulatory framework for decisionmaking, a remand in this case is clearly required. If the ALJ discounted these limitations solely because he viewed them as being attributable to alcohol consumption, it is clear that he did not explain the causal link between alcohol consumption and the limitations that Plaintiff described.

The Court also acknowledges Slifko's argument that the ALJ did not discuss her endometriosis. Document No. 14, p. 21. The Court notes that the objective evidence fails to provide significant evidence of endometriosis. Nevertheless, Plaintiff testified about this condition at the hearing, and her counsel emphasized it in his closing argument to the ALJ. Certified Transcript, pp. 406, 421-22. Dr. Patricia VerEllen, a psychiatrist, listed endometriosis as being among Slifko's medical problems. *Id.* at 218. Moreover, Plaintiff testified that she suffered from ovarian cysts, and that these cysts caused

11

her significant pain. *Id.* at 405-06. The medical evidence supports her testimony as to the existence of an ovarian cyst. *Id.* at 232, 263. There are not many details in the record, but it appears that a test during the summer of 2004 revealed the existence of a 4.5 centimeter left pelvic mass, which was viewed as a cyst or cystic mass of ovarian origin. *Id.* at 263. Despite this evidence, however, the ALJ apparently ignored Plaintiff's gynecological problems.

The Court acknowledges that impairments which do not result in functional limitations are irrelevant to the residual functional capacity inquiry. "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairments." *Pearson v. Barnhart*, 380 F. Supp. 2d 496, 505 (D.N.J. 2005). In this case, however, Slifko testified that her ovarian cysts made her feel like she had appendicitis, causing her to be "doubled over." Certified Transcript, p. 405. She also described her endometriosis by explaining that the lining of her uterus formed outside of the uterus, causing her to have "extremely painful menstrual cycles." *Id.* at 404. According to her, she was debilitated for twenty-four to forty-eight hours each month as a result of this condition. *Id.* ("Once a month I'm curled up in bed with either a hot water bottle or a heating pad, moaning.").

The United States Court of Appeals for the Third Circuit has explained that "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). The *Mason* court went on to state that "[w]hile there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." With respect to Plaintiff's ovarian cysts, the record contains objective evidence that Slifko had a 4.5 centimeter left

12

pelvic mass. Certified Transcript, pp. 232, 263. Despite Plaintiff's testimony as to the pain caused by her ovarian cysts, the ALJ did not acknowledge this impairment at all. *Id.* at 19. Furthermore, none of the symptoms described in the ALJ's opinion could reasonably be construed to refer to the pain allegedly related to Plaintiff's ovarian cysts. *Id.* at 22 (describing Plaintiff's testimony about shaky hands, migraine headaches, knee problems, writing difficulties, irritable bowel syndrome, crying spells, fatigue, lethargy, and panic attacks). Given Slifko's allegations regarding the disabling nature of these impairments, the ALJ was not free to ignore them.

Since the ALJ did not consider the effect that Plaintiff's endometriosis and ovarian cysts had on her ability to work, the residual functional capacity assessment in this case is not supported by substantial evidence. It may be that these impairments had no effect whatsoever on her ability to work, or it may be that they combined with her other impairments to effectively preclude gainful work activity. The ALJ did not address this question, however, requiring a remand for further administrative proceedings. On remand, of course, Slifko's residual functional capacity must account for all of her exertional and nonexertional impairments. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). While the ALJ need not accept every limitation that Plaintiff alleges, he must incorporate every limitation that the record credibly establishes. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). It is possible that the ALJ may find that an alleged impairment simply is not present, or that a present impairment results in no functional limitations. Nonetheless, in either case, such findings must be clearly articulated by the ALJ.

Slifko also contends that the ALJ ignored the side effects caused by her medications and the opinions of her treating physicians. Document No. 14, pp. 22-23. With respect to the side effects of

13

her medications, it is clear that the ALJ acknowledged Plaintiff's testimony about the side effect of fatigue. Certified Transcript, p. 22 ("She experienced crying spells in which she didn't want to get out of bed and her medications caused fatigue and made her feel like a zombie."). The ALJ did not specifically articulate a finding as to the effect that this had on Plaintiff's ability to work, aside from a very general statement that the credible evidence failed to support a finding that Slifko was unable to work on a full-time basis. *Id.* at 24. Since the case must be remanded for other reasons, there is no need for the Court to determine whether Plaintiff would nevertheless be entitled to a remand on the basis of the ALJ's failure to discuss the side effects caused by her medications. It suffices to say that the issue should be explored further on remand.

The Court notes that Dr. Stephen Hoffman and Dr. Ronald J. Horvath, who were treating physicians, concluded that Plaintiff was temporarily disabled between February 1998 and January 2005. *Id.* at 352-57. The ALJ stated that there was no evidence to support this conclusion. *Id.* at 21. The Court need not determine whether the ALJ's finding of non-disability is supported by sufficient evidence to warrant the rejection of the opinions of these treating physicians. The case needs to be remanded for other reasons. Nevertheless, on remand, the ALJ should be mindful of the applicable standards. If "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." 61 FED. REG. 34490, 34491. The ALJ must

14

accord great weight to the reports of treating physicians, "especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If the ALJ determines that a treating physician's opinion is outweighed by conflicting medical evidence, he may reject that opinion. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Whenever the ALJ's decision is not fully favorable to the claimant, the opinion of the ALJ must contain "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 61 FED. REG. 34490, 34492. It will be for the ALJ to weigh the evidence in this case, including the evidence of Plaintiff's endometriosis and ovarian cysts.

## IV. CONCLUSION

Accordingly, the Court will deny the Commissioner's Motion for Summary Judgment (Document No. 15), deny Plaintiff's Motion for Summary Judgment (Document No. 13) to the extent that it seeks an award of benefits, and grant Plaintiff's Motion for Summary Judgment to the extent that it seeks a remand to the Commissioner for further administrative proceedings. The decision of the Commissioner is hereby vacated, and the case is remanded for further administrative proceedings consistent with this opinion.

An appropriate Order follows.

**AND NOW**, this 12th day of June, 2007, this matter coming before the Court on the Parties' cross-motions for summary judgment, **IT IS HEREBY ORDERED** that: 1) Defendant's Motion for Summary Judgment (Document No. 15) is **DENIED**; and 2) Plaintiff's Motion for Summary Judgment (Document No. 13) is **DENIED** in part and **GRANTED** in part. Specifically, the Court denies Plaintiff's motion to the extent that it seeks an award of benefits. However, the decision of the Commissioner of Social Security is **HEREBY VACATED** and the above-captioned matter **REMANDED** for further administrative proceedings.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

**Cc:    Al counsel of record**

16